**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JAY COLEMAN CONNOR | Case No. 1:23-cv-00438-CKK |
| Plaintiff | JUDGE COLLEEN KOLLAR-KOTELLY |
| vs. | |
| PRINCIPAL LAW GROUP L.L.P. | |
| Defendant | |

**PLAINTIFF'S OPPOSITION TO THE**
**DEFENDANT'S MOTION TO BIFURCATE DISCOVERY**

In response to the Motion to Bifurcate (Doc. 22) filed by defendant Principal Law Group ("Principal"), Plaintiff states as follows:

## I.   Introduction

Principal has moved to limit discovery the claims of the individual Plaintiff. However, in this consumer class action alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. 227 for contacting numbers on the National Do Not Call Registry as well as a related state law claim for making telemarketing calls to a South Carolina number listed on the National Do Not Call Registry, Principal doesn't rely on anything unique about the Plaintiff's claims to support bifurcation. It simply claims that it's possible that the Plaintiff provided consent to receive the calls and that it is possible that Plaintiff was called by a third party. Critically, however, there is no information in the record that Principal's other telemarketing calls were made in a materially different way than that of the Plaintiff's.

1

## II.  Summary of Plaintiff's Claims and Factual Background

In this lawsuit, the Plaintiff has filed a putative class action complaint relating to the

Defendant's telemarketing conduct. The lawsuit alleges a violation of the Telephone Consumer

Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227)

for making pre-recorded calls. The Plaintiff also alleges that Principal initiated a telephone

solicitation to a South Carolina telephone number that has been listed on the National Do Not

Call Registry, which is a violation of South Carolina state law. *See* S.C. Code § 37-21-70. The

Plaintiff is seeking to represent the following putative classes:

SCTPPA CLASS

All persons with a South Carolina area code to whom (1) at any time from May 18, 2018
until trial, (2) Defendant, or someone on their behalf, (3) placed at least one call, (4)
where it called a number on the National Do Not Call Registry, (5) while promoting their
services.

TCPA ROBOCALL CLASS

All persons within the United States: (1) to whose cellular telephone number (2)
Defendant, or someone on their behalf, placed a telemarketing call (3) within the four
years prior to the filing of the Complaint (4) using an identical or substantially similar
pre-recorded message used to place telephone calls to Plaintiff.

Notably, although in its motion Principal Law speculates regarding a possible consent

defense to Plaintiff's claims, despite being obligated to have one, Principal Law has no record of

a written agreement that would support such a conclusion. *See, e.g.,* 47 C.F.R. § 64.1200(c)(iii)

("Such permission must be evidenced by a signed, written agreement between the consumer and

seller which states that the consumer agrees to be contacted by this seller and includes the

telephone number to which the calls may be placed"). This is particularly notable given that in

past instances involving similar claims as to which Principal Law asserts that it has a consent

defense, Principal Law has similarly failed to produce documents reflecting the purported

agreement with the consumer based on a purported visit to the exact same website (i.e., putting aside that there is no evidence of Plaintiff's consent, even if there is, the validity of the consent is a common issue for the class and not an individualized issue for the Plaintiff). *See* Perrong Declaration, Exhibit 1.

Likewise, there is no evidence of any rogue third party making these calls for Principal Law (but, even if there was, Principal Law's liability for their calls would be a common issue for the class).

## ARGUMENT

### I.     Bifurcation would be Inefficient and Inconvenient

Bifurcation would be inefficient and inconvenient, particularly because there is no proof of consent to call the Plaintiff or that a third party was involved in the calls, but even if there was, both of these issues would be common for the class.

District courts have broad discretion to control discovery. *Crawford—El v. Britton*, 523 U.S. 574, 598-99, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). "In resolving motions to bifurcate discovery at the pre-certification stage, district courts must balance the need to promote effective case management, the need to prevent potential abuse, and the need to protect the rights of all parties." *In re Domestic Airline Travel Antitrust Litig.,* 2017 U.S. Dist. LEXIS 232974, at *21-22 (D.D.C. Jan. 30, 2017). "The prime considerations in whether bifurcation is efficient and fair include whether merits-based discovery is sufficiently intermingled with class-based discovery and whether the litigation is likely to continue absent class certification." *Id.* Indeed, faced with a similar motion, another federal court judge denied a bifurcation request in another TCPA case earlier this year engaging in this exact analysis:

> The Court has reviewed the parties' joint status report [10]. The Court does not see a need to bifurcate discovery in this case. There will be some overlap in discovery here.

Discovery as to commonality and typicality under Rule 23 will also apply to the merits of the claim. Moreover, the Supreme Court in Walmart v Dukes has said the district court must conduct a rigorous analysis in determining class certification and that will often require some evaluation about facts that go to the merits of a plaintiff's underlying claims. Thus, bifurcating discovery often does not make sense as the lines between "class discovery" and "merits discovery" are significantly blurred.

*See Katz v. Allied First Bank, SB*, Civil Action No. 22-cv-5277, ECF No. 14 (January 3, 2023).

The Court should decide the same here.

Bifurcation of discovery is often "counterproductive." Manual For Complex Litigation (Fourth) ("MCL 4th") § 21.15 (2015).  That is readily apparent here.  To begin, the proposed bifurcation guarantees that the parties will need to duplicate their work.  First, the parties would undertake "individual merits" discovery and all that entails: written discovery requests, depositions, and then expert disclosures and expert depositions, all limited just to the merits of Plaintiff's individual claims. Then, defendant files a dispositive motion limited to the merits of Plaintiff's individual claims. And then, should the Court deny that motion, the parties have to start all over again, serving discovery requests and taking depositions of the same witnesses a second time, but this time focusing on class certification issues. And after that, there would be a second round of dispositive motions on the class claims. All told, this means at least two rounds of written discovery, two rounds of depositions (with the same witnesses being deposed twice), and then two rounds of summary judgment briefing.  This is the opposite of judicial economy. Indeed, "bifurcation of discovery in this case will increase litigation expenses by protracting the discovery period and by duplicating the discovery process, including the depositions." *Hartley-Culp v. Credit Mgmt. Co*, 2014 U.S. Dist. LEXIS 130308, *10 (W.D. Pa. September 15, 2014). The Court could deny the motion to bifurcate for this reason alone. *See ibid* (denying similar motion to bifurcate merits and class discovery in a TCPA case); *EQT Prod. Co. v. Terra Servs., LLC*, 2014 U.S. Dist. LEXIS 203680, *4 (W.D. Pa. October 21, 2014) ("Terra's proposal would

likely result in deposing the same witnesses twice—once in the liability phase, and again in the

damages phase. This is the definition of inconvenience, and the additional cost of duplicative

depositions and document review combine to counsel against bifurcation in this case.")

       Apart from the duplication of discovery outlined above, Principal's proposal is bound to

lead to additional discovery disputes and proceedings that would be completely unnecessary

without bifurcation.  There is significant overlap between discovery relevant to the merits of

Plaintiff's individual claims and issues of class certification.  Indeed, "[class certification]

analysis will frequently entail overlap with the merits of the Plaintiff' underlying claim . . .

because the class determination generally involves considerations that are enmeshed in the

factual and legal issues comprising the Plaintiff' cause of action." *Comcast Corp. v. Behrend*,

569 U.S. 27, 33-34 (2013) (internal citations and quotations omitted). *Lakeland Reg'l Med. Ctr.*

*v. Astellas US*, LLC, 2011 U.S. Dist. LEXIS 16684, *4 (M.D. Fla. 2011) ("the line between

'class issues' and 'merits issues' is practically difficult, if not impossible, to determine.") Notes

of Advisory Committee on 2003 Amendments to Fed. R. Civ. Pro. 23(c)(1)(A) ("Active judicial

supervision may be required" to avoid "an artificial and ultimately wasteful decision between

'certification discovery' and 'merits discovery.'")

       For instance, are Principal's email communications with the vendor that made

telemarketing calls or Principal's communications and process for complying with the TCPA in

general class discovery or merits discovery?  Are records of all other submissions to the website

Principal presumably intends to assert led to the purported consent for the calls class discovery

or merits discovery?  Likewise, are the web server logs showing the various sources of traffic to

its website merits discovery or class discovery? Given this overlap, bifurcation would "belie

principles of judicial economy, as the Court may be forced to spend time and resources resolving

discovery disputes over what is 'merit' discovery as compared to 'class' discovery." *In re Plastics Additives Antitrust Litig.*, 2004 U.S. Dist. LEXIS 23989, *9 (E.D. Pa. November 29, 2004); (citing *In re Hamilton Bancorp. Inc. Securities Litigation*, 2002 WL 463314, at *1 (S.D. Fla. Jan. 14, 2002) (noting that 'bifurcation of discovery may well-increase litigation expenses by protracting the completion of discovery, coupled with endless disputes over what is 'merit' versus 'class' discovery').

The inevitable disputes about what qualifies as merits vs. class discovery is thus a second reason to deny the request for bifurcation. As another Court held while denying a similar request for bifurcation of discovery:

> In fact, bifurcation would have the opposite effect. Much of the discovery sought appears [*7] relevant to both the class and individual claims, including documents concerning Plymouth's telemarketing scripts, policies, contracts, practices and procedures, complaints received, investigations of those complaints and audits of third-party providers, as this information is relevant to the issues of both vicarious liability for third-party conduct and willfulness. *Accord* DE [25] (Defendant arguing that it has a "strong defense" because it cannot be held "vicariously liable" for the conduct at issue as it relates to Plaintiff and recognizing the difference in recovery for a "willful" violation of the statute).

> Moreover, even if the named Plaintiff' claim were defeated, there is no reason to think that this case would likely end. The Complaint identifies complaints by two other individuals involving Plymouth. Both claim to have received more harassing calls than Plaintiff, and either one could replace Plaintiff as a class representative. Accordingly, there is no indication from the motion papers that Defendant's success as to Plaintiff' individual claim would necessarily result in a prompt, efficient resolution of this litigation.

*Charvat v. Plymouth Rock Energy, LLC*, No. 15-CV-4106 (JMA) (SIL, 2016 U.S. Dist. LEXIS 6778, at *6-7 (E.D.N.Y. Jan. 12, 2016). The latter reason with respect to the addition of a second plaintiff is even more compelling here where counsel for the Plaintiff are submitting the declaration of Andrew Perrong, another individual who received telemarketing calls from Principal alleged to violate the TCPA who disputes the validity of Principal's consent. *See* Exhibit 1, Affidavit of Andrew Perrong.

Principal claims judicial economy will be served by allowing them to eliminate discovery other than on the defense of an aspect of the claim they intend to pursue, which is *potentially* that the Plaintiff provided consent and *potentially* that the calls were initiated by a third party. However, their suggested approach will not be efficient. Principal's request to limit discovery initially to its preferred issues is "untenable and unfair." *Wilson v. Quest Diagnostics, Inc.*, 2019 U.S. Dist. LEXIS 224798, *9 (D. N.J. August 22, 2019) (denying virtually identical request to bifurcate in a TCPA case).  "The Court should not allow one side to pick one defense of its choosing, limit discovery to that issue, and then presumably try a summary judgment motion. Both sides have a right to discovery." *Ibid.*

Notably, Principal's basis for bifurcating discovery doesn't support a unique defense to the Plaintiff's individual claim. Principal has claimed in its discovery responses that the Plaintiff consented to the calls at issue, but has not provided any actual evidence or documentation to that effect. *See* Exhibit 2. While the Plaintiff steadfastly denies ever visiting the Defendant's website, for purposes of this motion it is notable that the Defendant has not identified any different ways in which it claims to have gathered consent. *Id.* Indeed, Mr. Perrong's affidavit also makes clear that when he previously alerted Principal to receiving these illegal calls, they too claimed that he went to a website but produced no evidence of it. *See* Exhibit 1. However, just like Mr. Connor, Mr. Perrong did not visit the Defendant's website. *Id.* The Defendant has simply revealed that there is a common question to decide with respect to their purported uniform process for acquiring telephone numbers to call. Indeed, Mr. Connor has also supplied an affidavit that makes clear that the conversation of the telemarketing call he got from the Defendant undermines the claim that he went to their website. *See* Exhibit 3, Affidavit of Jay Connor. Mr. Connor's affidavit states that after receiving the pre-recorded call, he spoke to an individual who

7

said that they were going to "submit a form online and once one of our lawyers review it, they'll call you". *Id.* at ¶6. As such, it appears that the form submitted online was done by the Defendant, or some company acting on its behalf. *Id.* at ¶ 7.

Similarly, is Principal Law Group's claim that the call *may* have been initiated by a third party it retained as it will be common evidence that will determine if Principal Law Group is liable for the actions of any third party that may have initiated calls. *See e.g. Williams v. Pillpack LLC*, 343 F.R.D. 201, 211 (W.D. Wash. 2022) (certifying a TCPA class action case and holding "the Court finds Plaintiff's common questions related to vicarious liability are susceptible to class-wide proof and the Rule 23 commonality/predominance requisites as to these questions are satisfied.") Accordingly, the evidence indicates not that bifurcating discovery would be an efficient way of conducting this litigation but instead that it will result in needless delay.

## II.    Bifurcation would Prejudice Plaintiff

Finally, the Court should deny the motion to bifurcate because it will prejudice Plaintiff' case.  Principal's request to limit discovery initially to its preferred issues is "untenable and unfair." *Wilson v. Quest Diagnostics, Inc.*, 2019 U.S. Dist. LEXIS 224798, *9 (D. N.J. August 22, 2019) (denying virtually identical request to bifurcate in a TCPA case).  "The Court should not allow one side to pick one defense of its choosing, limit discovery to that issue, and then presumably try a summary judgment motion. Both sides have a right to discovery." *Ibid.*

There is a real risk that the requested bifurcation will prejudice Plaintiff through the loss of evidence held by third parties, such as any third-party vendors involved in the maintenance of the websites at issue or Principal's calls.  *See Briscoe v. Klaus*, 538 F.3d 252, 259 (3rd Cir. 2008) ("Generally, prejudice includes 'the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the

opposing party.'"); *Hartley-Culp* 2014 U.S. Dist. LEXIS 130308 at *9 (denying similar request in another TCPA case after "find[ing] prejudice to Plaintiff if discovery was bifurcated" in the same manner requested here); *Sanaah v. Howell*, 2009 U.S. Dist. LEXIS 35260, *2 (D. Colo. 2009) ("with the passage of time, the memories of the parties and other witnesses may fade, witnesses may relocate or become unavailable, or documents may become lost or inadvertently destroyed."); *Saleh v. Crunch, LLC*, 2018 U.S. Dist. LEXIS 36764, at *5 (S.D. Fla. Feb. 28, 2018) (denying a stay in a TCPA case and noting that the "fading memory of any witness" is prejudicial).

Here, the Plaintiff's putative class is based off the fact that the TCPA claims are governed by the four year federal statute of limitations in 28 U.S.C. § 1658(a) ("Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after [December 1, 1990] may not be commenced later than 4 years after the cause of action accrues"); *See also Giovaniello v. ALM Media, LLC*, 726 F.3d 106, 115 (2d Cir. 2013) (four-year statute of limitations applies to private TCPA claims in federal court). However, not all telecommunications companies, including the companies that are used to engage in automated telemarketing, keep records of telephone activities for up to four years, and without an immediate gathering of records, the likelihood of destruction of this evidence increases with each passing day. Many of the major telecommunications providers will only retain call record information for 12-18 months, and presumably smaller telecommunications providers keep this information for an even shorter period. There has been no indication that these companies have preserved records of all telemarketing calls they, or any vendor they engaged, made to putative class members. Indeed, Live Calls has explicitly identified one such vendor in its pending motion to dismiss.

The risk to the putative class members' interests is not merely hypothetical. Multiple

decisions have turned on the destruction of telephone records. For example, in *Levitt v. Fax.com*, No. 05-949, 2007 WL 3169078, at *2 (D. Md. May 25, 2007), the court denied class certification in a TCPA fax case because "critical information regarding the identity of those who received the facsimile transmissions" was not available. Likewise, in *Pasco v. Protus IP Solutions, Inc.,* 826 F. Supp. 2d 825, 831 (D. Md. 2011), the court was compelled to grant the defendant's motion for summary judgment where Mr. Pasco was unable to obtain the "transmission data on which to support their claims that [the defendant] sent them the unsolicited faxes at issue."

In denying a motion to stay, another federal court considered this issue in a TCPA case:

> In addition, Orangetheory has not demonstrated irreparable injury; it notes only that it is potentially on the hook for substantial damages, given the putative nationwide class. Monetary damages, of course, do not by themselves constitute irreparable injury. Simon, on the other hand, persuasively argues that she would be injured by a stay, particularly because discovery has yet to commence, and evidence is at risk of being lost. This injury, which is both likely and irreparable, far outweighs the injury posed by a potential future judgment for money damages.
> …
> In the meantime, it is clear that critical evidence, including records from any third parties that Orangetheory may have contracted with for its telephone marketing, may be lost or destroyed.

*Simon v. Ultimate Fitness Grp., LLC*, Case No. 19-cv-890, 2019 U.S. Dist. LEXIS 147676, at *18, 21-22 (S.D.N.Y. Aug. 19, 2019).

As a result, courts regularly permit plaintiffs to commence discovery prior to a Fed. R. Civ. P. 26(f) conference related to these issues implicating non-parties in TCPA cases. *See e.g. Cooley v. Freedom Forever LLC et. al*., Civil Action No. 2:19-cv-562, ECF No. 37 (D. Nev. July 19, 2019); *Cooley v. First Data Merchant Services, LLC et. al.*, Civil Action No. 19-cv-1185, ECF No. 32 (N.D. Ga. July 8, 2019); *Abante Rooter and Plumbing, Inc. v. Birch Commc'ns, Inc.* Civil Action No. 15-cv-03562, Dkt. No. 32 (N.D. Ga. 2016); *Mey v. Interstate National Dealer Services, Inc., et al.*, Civil Action No. 14-cv-01846, Dkt. No. 23 (N.D. Ga. Aug. 19, 2014). Here, the Plaintiff

is simply seeking to pursue discovery in the ordinary course.

Any potential bifurcation will also necessarily delay class discovery and Plaintiff's motion for class certification prejudicing Plaintiff and the proposed class members. *See* Fed. R. Civ. P. 1, 23(c)(1)(A). Delays in class discovery compound the already-substantial difficulty of gathering information necessary to identify class members and establish their claims. *See Young v. Peraza*, No. 1560968-CIV, 2015 WL 4639736, at *2 (S.D. Fla. Aug. 4, 2015) ("Were the Court to grant the Motion [to stay], Plaintiff would stand to suffer prejudice as the memories of eyewitnesses faded with the passage of time."); *Koppelman v. Galt Ocean Manor Condo. Ass'n, Inc.*, No. 16-CV-62175, 2016 WL 6777896, at *1 (S.D. Fla. Nov. 16, 2016) ("when discovery is delayed or prolonged it can create case management problems which impede the [c]ourt's responsibility to expedite discovery and cause unnecessary litigation expenses and problems").

Additionally, any delay creates the risk that the evidence Plaintiff needs to prevail on his claim will be destroyed, lost, corrupted, or forgotten. *Lathrop v. Uber Techs., Inc.*, 2016 U.S. Dist. LEXIS 2490, at *12 (N.D. Cal. Jan. 8, 2016) (Plaintiff in putative class action may "suffer prejudice from a stay because the case would extend for an indeterminate length of time, increase the difficulty of reaching class members, and increase the risk that evidence will dissipate"); *accord Izor v. Abacus Data Sys.*, 2019 U.S. Dist. LEXIS 130865, at *10 (N.D. Cal. Aug. 5, 2019); *see Blue Cross & Blue Shield of Alabama v. Unity Outpatient Surgery Ctr., Inc.*, 490 F.3d 718, 724 (9th Cir. 2007).

## III.    Conclusion

The Court should deny the motion to bifurcate discovery.

RESPECTFULLY SUBMITTED AND DATED this August 17, 2023.

Respectfully submitted,


*/s/ Anthony I. Paronich*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

Meredith Kinner, D.C. Bar #1024953
Managing Member
Kinner & McGowan, PLLC
413 East Capital St. SE
Washington, DC 20003
(202) 846-7148
mkinner@kinnermcgowan.com

*Counsel for Plaintiff and the putative classes*


## CERTIFICATE OF SERVICE

I hereby certify that on August 17, 2023, I electronically filed the forgoing through the

Court's CM/ECF system.

*/s/ Anthony I. Paronich*
Anthony I. Paronich